UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-431-GWU

TRINA KILLION,                                                                     PLAINTIFF,

VS.                            **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,               DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

06-431 Killion

        Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

      Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

06-431 Killion

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

06-431 Killion

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

06-431 Killion

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Trina Killion, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of cervicalgia, muscle spasms, and extremity pain.  (Tr. 14).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform her past relevant work, and therefore was not entitled to benefits.  (Tr. 16-17).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's vocational history as a cashier, secretary, instructional assistant, and medical assistant and educational background of having a high school equivalency diploma could perform any jobs if she were limited to "medium" exertion level with no non-exertional restrictions specified.  (Tr. 241-2).  The VE responded that such

a person could do the "file work" although no reference was made to the performance of the other jobs. (Tr. 242).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to severe headaches and severe muscle spasms in her left arm and neck. (Tr. 69). At the administrative hearing, she described stopping work in November, 2004 because she found it impossible to continue being a cashier. (Tr. 230). Additional problems were weakness in her left leg and facial twitching. (Tr. 231-2). She stated that she had been referred to a neurologist, Dr. Acob, who wanted to send her to "pain management." She then went to another physician, Dr. Moore, for a second opinion, and received a diagnosis of fibromyalgia. (Tr. 233). She stated that her medications made her drowsy. (Tr. 234).

Medical records include an evaluation by Dr. Arden Marc Acob who examined the plaintiff on March 17, 2004, although the plaintiff indicated that she had been seen by the physician previously. (Tr. 129). Dr. Acob's examination was positive for paraspinal muscle tenderness, but was otherwise generally normal. (Tr. 131). He prescribed Xanaflex and Effexor (Tr. 132), and obtained an EMG/NCV which was read as normal. (Tr. 124-125). On June 2, 2004, the plaintiff reported some improvement on medications, which were given as Lorcet, Gabitril, Tizanidine and

06-431 Killion

Effexor. (Tr. 120). The examination continued to show primarily muscle tenderness. (Tr. 122). Dr. Acob diagnosed cervicalgia, muscle spasm, and "pain in limb," and continued to prescribe Lorcet, Gabitril, and Xanaflex. (Tr. 123). There is no evidence of further visits to this source or any indication of functional restrictions.

A state agency physician, Dr. Timothy Gregg, apparently reviewed the record at this point and indicated that the plaintiff's impairments were non-severe. (Tr. 136). He noted that there was no evidence of "significant" limitations on examination, but erroneously stated that the plaintiff was on no medications. (Id.). Another state agency physician agreed with this assessment without making additional comments. (Tr. 137).

At the administrative hearing, the plaintiff submitted handwritten assessments by Dr. C.A. Moore dated February 24, 2006. Dr. Moore indicated that he had seen the plaintiff beginning in May, 2005, and had diagnosed fibromyalgia and irritable bowel syndrome. (Tr. 166-7). Positive findings included multiple tender points, numbness and tingling, chronic fatigue, anxiety, headaches, and myofascial pain syndrome. (Tr. 167-8). In addition to emotional problems, Dr. Moore stated that the plaintiff's medication would cause decreased cognitive function, sleepiness, and drowsiness (Tr. 169) which was consistent with the plaintiff's testimony (Tr. 234). Dr. Moore identified restrictions of lifting less than ten pounds, sitting and standing on less than a full-time basis, occasionally climbing and balancing, never crouching,

kneeling, crawling, or bending, having restrictions on reaching, handling, feeling, pushing, pulling, and working around heights, moving machinery, temperature extremes, noise, humidity and vibration. (Tr. 171-4).

The ALJ rejected Dr. Moore's opinion because he had seen the plaintiff on three occasions only and because of an internal inconsistency, in that his restrictions limited the plaintiff to sitting or standing a total of one hour per day, but then stating that she could sit or stand one and one-half hours without interruption. (Tr. 16, 171-2). However, Dr. Moore was the only examining source to express an opinion, and even if his restrictions contained a clerical error, there is no question that he was restricting the plaintiff to less than full-time sitting, standing, or walking.[1] While the state agency sources opined that the plaintiff would have no "severe" impairment, the reliability of Dr. Gregg's assessment was compromised by his belief that the plaintiff was on no medications. Whatever else one may say about Dr. Acob's findings, his most recent office note indicates that he prescribed a significant amount of pain medication, and it is not unreasonable that these medications would have produced the side effects described by the plaintiff and by Dr. Moore. Social Security Ruling 96-7p provides that an ALJ's credibility determination be based on the entire case record, including the type, dosage, effectiveness and side effects of any medication taken to alleviate symptoms. SSR 96-7p, p. 3. The level of

---

[1] Nor was any attempt made to recontact the treating source for clarification.

06-431 Killion

medication prescribed by Dr. Acob supports the plaintiff's subjective complaints of pain, and supports her alleged side effects.

The plaintiff also cites Barker v. Shalala, 40 F.3d 789, 784 (6th Cir. 1994) for the proposition that if the opinion of a non-examining source is to be accepted over that of an examiner, the non-examiner must have access to the entire record and clearly state the reasons for his difference of opinion.

While the defendant questions the applicability of Barker, the Sixth Circuit has recently reaffirmed "[t]he importance of a non-examining source having a complete medical snapshot when reviewing a claimant's file." Rogers v. Commissioner of Social Security, --F.3d--, 2007 WL 1501302, note 4 (6th Cir. May 24, 2007).[2]

Moreover, reliance on the negative MRI and EMG/NCV testing is a questionable ground for discounting the plaintiff's credibility. Fibromyalgia is an "elusive" and "mysterious disease" which causes severe musculoskeletal pain, although fibromyalgia patients manifest normal muscle strength and neurological reactions and have a full range of motion. Rogers, supra, quoting Preston v. Secretary of Health and Human Services, 854 F.2d 815, 820 (6th Cir. 1988 and

---

[2] In Rogers, the Court reaffirmed the language in SSR 96-6p that opinions from state agency sources may be entitled to greater weight than opinions of treating or examining sources if the state agency consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the plaintiff's particular impairment which provides more detailed and comprehensive information than was available to the individual's treating source. Id.

06-431 Killion

Swain v. Commissioner of Social Security, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003). The process of diagnosing fibromyalgia includes testing a series of focal points for tenderness, which it appears Dr. Moore had done (Tr. 167), and the ruling out of other possible conditions through objective medical and clinical trials. Id.

The decision will be remanded for further consideration of the factors outlined in this opinion.

This the 19th day of June, 2007.

Signed By:

G. Wix Unthank

United States Senior Judge